**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| **XL INSURANCE AMERICA, INC., AS SUBROGEE OF HOSTESS HOLDCO, LLC N/K/A HOSTESS BRANDS, LLC, and HOSTESS HOLDCO, LLC N/K/A HOSTESS BRANDS, LLC, INDIVIDUALLY**<br><br>Plaintiffs,<br><br>v.<br><br>**C.H. BABB CO., INC.,**<br><br>Defendant. | **Case No.: 4:26-cv-00349-CDL** |

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

**I.      PURPOSE**

This Order supplements the provisions of Rules 26 and 34 concerning discovery of electronically stored information ("ESI"), Local Rules, and any other applicable orders and rules. This Order does not displace Rules 26 or 34 or diminish a Party's obligations to search for, collect, and produce discoverable information that is kept in the ordinary course as ESI.

This Order shall not enlarge, reduce, or otherwise affect the proper scope of discovery in this Litigation, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation or arbitration. However, the Parties have agreed to a procedure by which document custodians and search terms will be agreed upon and employed to identify and produce relevant documents. Additionally, this Order does not enlarge, reduce, or otherwise affect the preservation obligations of the Parties.

## II.    COOPERATION & SCOPE

**A.    Cooperation.** The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith consistent with this ESI Order.

While this Order is intended to provide the Parties with a comprehensive framework to address and resolve a wide range of ESI issues, it is not intended to be inflexible. The Parties anticipate potential deviations from the portions of the protocols herein associated with the form of production of ESI in certain instances, such as in the production of unusual file formats, and the Parties agree to meet and confer on any issues associated with deviation of such protocols and to approve any such deviation in writing. The Parties further agree to meet and confer on any discovery disputes regarding ESI.

**B.    Scope.** To promote efficient and proportional discovery, and to ensure transparency regarding the scope and methodology of ESI searches and productions, the Parties shall engage in good faith discussions and reach written agreement on the following parameters prior to initiating substantial ESI collection or production:

**1.    Date Range**. The Parties shall confer and agree upon the relevant date range(s) for ESI searches, taking into consideration the claims, defenses, and subject matter of the litigation. The agreed-upon date range(s) shall be applied consistently to all ESI searches unless otherwise stipulated or ordered by the Court.

**2.    Custodians and Data Repositories**. The Parties shall identify and exchange lists of individual custodians and non-custodial data repositories (*e.g.*, shared drives, enterprise systems, cloud sources) reasonably believed to contain potentially relevant ESI. The Parties shall confer to reach agreement on the custodians and repositories from which ESI will be collected, searched, and produced. Any disputes regarding the inclusion or exclusion of particular

custodians or repositories shall be addressed promptly through meet and confer, and, if unresolved, may be raised with the Court.

3.    **ESI Search Terms and Methods**. The Parties shall exchange proposed ESI search terms, filters, or other search methodologies intended to identify potentially responsive ESI, including but not limited to keyword terms, Boolean operators, and any technology-assisted review tools. The Parties shall confer and, if necessary, consider exchanging hit reports for proposed ESI search terms, to finalize and agree upon the search terms and methods to be applied, with the goal of capturing relevant ESI while minimizing overbreadth and undue burden.

4.    **Search Protocol Documentation**. The Parties shall memorialize in writing all agreed-upon parameters—including but not limited to the applicable date range(s), custodians, data repositories, and search terms or methods—prior to the commencement of substantial ESI collection or production. Each Party shall provide the other with documentation confirming the parameters applied to its own ESI searches and productions.

5.    **Changes to Agreed Parameters**. If a Party believes that modification of the agreed search parameters is warranted (for example, to address newly identified sources or to refine search terms), that Party shall promptly notify the other Party, provide the basis for the proposed change, and confer in good faith to address the issue. No Party shall unilaterally alter the search parameters without written agreement or, if necessary, leave of Court.

6.    **Ongoing Cooperation and Dispute Resolution**. The Parties acknowledge that ongoing cooperation is essential to efficient and fair ESI discovery. The Parties shall meet and confer in good faith to resolve any issues that arise relating to ESI search and production parameters. In the event of any unresolved disputes, the Parties may seek appropriate relief from the Court.

**7.**      **Supplementation**. Should additional relevant custodians, repositories, or timeframes be identified during discovery, the Parties shall promptly disclose such information and confer regarding the necessity and scope of supplemental searches or productions, if any.

## III.   DEFINITIONS

The following definitions will apply in this Order:

**A.**      **Bates Number** means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing Party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing Party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen (16) characters in length.

**B.**      **Document** means anything subject to production or inspection under Federal Rule of Civil Procedure 34(a), including (1) any document or electronically stored information ("ESI")—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding Party into a reasonably usable form; or (2) any tangible thing.

**C.**      **ESI** means any electronically stored file or information kept as such in the ordinary course, consistent with Federal Rule of Civil Procedure 34, including without limitation (1) electronically stored email messages; (2) word processing documents (created with, for example, Microsoft Word and WordPerfect); (3) files formatted for display in a web browser, for example, files with an .htm, .html, .php, or .cfm extension; (4) Adobe Acrobat files; (5) ASCII text files, for

example, files with a .txt file extension; and (6) presentation documents and embedded files (created with, for example, Microsoft PowerPoint).

**D.** **Hard Copy Document** means a Document kept in physical form, as opposed to electronic form, in the ordinary course of a Party's business.

**E.** **Native Format** means the associated file structure defined by the original application with which an electronic file was created. For example, the Native Format associated with a Microsoft Word 2007 file is .docx and the Native Format associated with an Adobe Acrobat file is .pdf.

**F.** **Spreadsheet** means an electronic file that displays multiple cells that together make up a grid consisting of rows and columns, each cell containing either alphanumeric text or numeric values, including, but not limited to, files created with Microsoft Excel.

## IV. PRODUCTION PROTOCOLS FOR ESI

**A.** **ESI Production Format and Requirements**. All ESI, and all Hard Copy Documents produced as scanned images, shall be produced as black and white Group IV single-page TIFF (300 DPI, 1 bit) with the following exceptions: (1) color image files such as, but not limited to, .GIF, .JPG, .PNG, and .BMP files shall be produced as single page color jpegs (.JPG); and (2) documents identified in IV.B., below, may be produced in native format in accordance with the requirements of that section.

When producing ESI or scanned Hard Copy Documents, the Parties shall simultaneously provide for all such produced documents: (1) image load files for all produced documents in Concordance (.OPT) format to facilitate the use of the produced images by a document management or litigation support system, (2) the extracted metadata listed in the table below in a Concordance .DAT format, or other standard, compatible file format and extension as the receiving

Party specifies, and (3) the searchable text (OCR) for non-native or non-searchable native files as multi-page text (.txt) files or other standard, compatible file format as specified by the receiving Party.

Except as expressly authorized in this Order, a producing Party shall not, prior to producing a document, delete, conceal, or otherwise alter a document's file name or metadata from how it existed in the Party's ordinary course of business.

The following objectively-coded metadata shall be provided within the load file for each document to the extent reasonably accessible, and to the extent that data for such field exists for a given document:

| CATEGORY | FIELD NAME | FIELD DESCRIPTION |
|---|---|---|
| *All* | BEGDOC | Starting number of a document; aka BegDoc, BeginDoc |
| | ENDDOC | Ending number of a document; aka EndDoc, EndingDoc |
| | BEGATTACH | Starting number for parent document within a group; aka BegAttach |
| | ENDATTACH | Ending number for child document within the group; aka EndAttach |
| | CUSTODIAN | Custodian(s) / source(s); Last, First |
| | ALL CUSTODIANS | Custodian(s) information for original and de-duplicated file(s); Last, First |
| | SOURCE/ORIGINAL FILEPATH | File path indicating the original location of the document, or for emails, the full folder path where email was found reflecting the location of the container file (if found in such) and the foldering information on the email system or in the container file |
| | ALL SOURCES/FILEPATHS | Path information for original and de-duplicated file(s) |
| | CONFIDENTIALITY | Confidentiality designation of a document |
| | FILEEXTENSION | Actual file extension of the eDoc or email; aka Extension |
| | MD5HASH | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm |
| | PARENTID | Document ID of the parent document; this field will only be available on child items |

| CATEGORY | FIELD NAME | FIELD DESCRIPTION |
|---|---|---|
| | CHILDID | Attachment document IDs of all child items in family group delimited by semicolon; this field will only be present on parent items; aka AttachmentDocID |
| | NATIVELINK | Path to native files if natives are delivered |
| | TEXTLINK | Path to text files |
| | REDACTED | Identification of whether redactions have been applied (yes/no format) |
| | FILESIZE | Size of native file, in bytes |
| | PAGECOUNT | Number of pages |
| | | |
| Email | FROM | Sender of the email; aka SentFrom, SenderNames |
| | TO | Recipient(s) of the email; aka SentTo, RecipientNames |
| | CC | Recipient(s) of the email in the "CC" field; aka CCRecipientNames |
| | BCC | Recipient(s) of the email in the "BCC" field; aka BCCRecipientNames |
| | SUBJECT EMAIL | Subject of the message |
| | SENTDATE (DATE & TIME) | Date and time the email was sent |
| | DATERECEIVED (DATE & TIME) | Date and time the email message was received |
| | ATTACHMENTCOUNT | Number of attachments an email has |
| | MESSAGE TYPE | Outlook bound property indicating type of entry in store; aka MsgClass. Possible values include Appointment, Contact, Distribution List, Delivery Report, Message, or Task |
| | MESSAGEID | Message number created by an email application and extracted from the email's metadata; aka int  msgID |
| | | |
| E-Doc | FILENAME | Name of the original file; aka Filename, Original Filename, Name |
| | TITLE | The descriptive name or subject line of the document as stored within its application metadata, which is distinct from the document's file name |
| | AUTHOR | Author of the eDoc; Last, First |
| | DATE CREATED (DATE & TIME) | Date the eDoc was created; aka CreationDate, HeaderCreatedDateTime |
| | DATE LAST MODIFIED (DATE & TIME) | Date & Time the eDoc was last modified; aka ModifiedDate, ModificationDate, HeaderModifiedDateTime |

If after reviewing any black and white document, the receiving Party believes that color is important to the understanding or use of the document, the Parties agree to engage in discussion regarding production of such documents in color, which production will not be unreasonably withheld.

**B.**      **Native Format**. Parties shall produce the following ESI in native format: (1) Spreadsheets (e.g., excel, google sheets, OpenOffice, CSV, TSV, etc.), and (2) audio, video, XML, and other files formats that cannot be converted to TIFF, and (3) schedules (*e.g.*, XER, MPP, etc.). Documents produced in native format shall set forth the document's Bates number at the end of the file title metadata field, which is distinct from the document's file name. ESI produced in native format shall be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality designation and, whenever feasible, the producing Party shall include accompanying metadata in a load file provided with the native ESI. The Parties agree not to remove, alter, or conceal any metadata from ESI produced in native format. Additionally, if after reviewing ESI produced in a non-native format, the receiving Party believes that it is necessary to review a certain document or documents in native format, the Parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

**C.**      **Hard Copy Documents**. For any hard copy document that a Party elects to produce as a scanned image, the Party shall ensure the document is appropriately scanned, logically unitized, and produced consistent with the requirements of IV.A, above. This provision does not obligate any Party to produce documents in a manner other than in which those documents were kept in the ordinary course of business, such that hard copy documents that are not scanned into

electronic form prior to the date of production may be produced in the same manner in which they are maintained (e.g., as hard copies). Copies of such hard copy documents may be made available for inspection and copying or may be delivered to the office of counsel for the receiving Party.

D.      **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

E.      **Attachments.** As a standard practice, responsive documents should be provided with full family members (parent emails and all attachments), even if some attachments may be non-responsive, with the exception that parent emails or attachments containing information protected by an applicable privilege against disclosure in discovery may be produced with redactions for the privileged information or withheld, in which case a slipsheet indicated it was withheld as privileged should be provided in place of the document.

F.      **De-duplication**. The Parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that exact duplicates of a document (*i.e.*, all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing Party's ability from the entire population of documents to be produced. A producing Party shall preserve and maintain all ESI that is not produced as a result of de-duplication.

G.      **Email Thread Analysis.** In order to reduce the production volume of entirely duplicative content within email threads, the Parties shall utilize "email thread suppression" prior to disclosing any such data or documents, except where applying such suppression would impose material additional costs beyond standard processing, or where the unique structure or technical

9

characteristics of the emails render thread suppression impracticable or infeasible. Any Party seeking to withhold thread suppression on these grounds must promptly notify the other Parties and be prepared to articulate the specific cost, technical limitation, or other basis for its position. The Parties shall confer in good faith to resolve any disputes regarding the application of email thread suppression.

As used in this Order, email thread suppression means reducing the duplicative production of email threads by only producing the most inclusive, most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. The produced emails must include all of the responsive information from a thread, including attachments. For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced. Notwithstanding the foregoing, email threading cannot be employed to withhold from production an email chain where the top-level email is privileged but previous all-inclusive emails are not privileged, *i.e.*, if the top-level email of an all-inclusive chain is privileged but the chain includes non-privileged information, the non-privileged information must be produced and cannot be withheld from production because the email chain is all-inclusive of an email chain that contains later-in-time privileged information.

A producing Party shall preserve and maintain all ESI that is not produced as a result of email thread suppression.

**H.     Email Redactions.** In the event that the producing Party finds that redactions are needed, the producing Party shall redact only privileged information within the body of the email,

in addition to the subject line, if it reveals privileged information. Other identifying information, such as the To/From/Bcc, for example, shall not be redacted. The Parties may redact certain metadata if it reveals privileged information.

**I.      Native Redactions.** In the event that the producing Party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

**J.      Privilege Logs.** A producing Party shall maintain records of all ESI that is withheld from production based, in whole or in part, on the assertion of any privilege. Such maintained records shall be sufficient to evaluate the merits of the asserted privilege as to each such document.

**K.      Databases**. A receiving party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in Microsoft Access or other database software. If the producing Party objects to such form, the Parties shall undertake reasonable efforts, and, if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production. Where a Party produces Microsoft Access or other database software files only in native format, the producing Party shall provide a corresponding image (TIFF) placeholder that contains the Bates number and confidentiality designation of the file.

**L.      Rule 26 Standard.** The Parties agree that if a Party designates a data source as not reasonably accessible, such designation shall be assessed using the factors established in Fed. R. Civ. P. 26 (and case law interpreting the same).

**M.      No Backup Restoration Required.** Absent a showing of good cause, no Party need restore any form of media upon which backup data is maintained in a Party's normal or allowed

11

processes, including, but not limited to, backup tapes, disks, SAN or other forms of media, in order to comply with its discovery obligations in the present case.

**N.      Text Messages, Voicemail, Instant Messages/Chats, and Mobile Devices.** The Parties agree that text messages, voicemails, instant messaging-type communications (*e.g.*, instant messages, Slack messages, Teams chats, Jabber messages, etc.), PDAs and mobile devices are generally deemed not reasonably accessible and therefore need not be preserved and collected. However, if a Party contends in good faith that (i) such messaging or data is in the possession or control of a Party or a potential witness (whether a Party or non-party witness), and (ii) such messaging or data contains information that is relevant and material to any claim or defense in this action that cannot be obtained from a less burdensome source, the Parties agree to engage in discussion regarding the necessity and production of discrete and targeted text message, chat message, voicemail and/or mobile device data, which production will not be unreasonably withheld if good cause is shown.

**O.      Data Subject to EU Privacy Laws.** The Parties agree to make reasonable efforts to protect any data or information subject to the General Data Protection Regulation (GDPR) or other similar laws and regulations regarding data privacy and cross border data transfer, and agree that such data or information may be redacted in accordance with the GDPR or other laws or regulations, to the extent reasonably practicable. Nothing herein is meant to conflict with the requirements of the GDPR or impose any obligations that would conflict with protections afforded under the GDPR.

**P.      No Obligation to Convert Third Party Productions**. The Parties agree that any document production received from a third party shall be produced to the other Parties to this action in the format and structure in which it was received.

**Q.** **Rolling Productions.** The Parties agree to produce documents on a rolling basis but must advise the other Party of the reasonable date by which their production will be completed, as provided in Fed. R. Civ. P. 34(b)(2)(B), subject to any supplementation in accordance with Fed. R. Civ. P. 34(e).

**R.** **Method of Production**. The Parties agree that documents produced will be made available via secure file transfer (*e.g.*, SecureShare) if requested by the receiving Party. If a production is too large for secure file transfer, documents will be produced on a secure CD/DVD, thumb drive, hard drive or similar media, or via another method agreed to by the producing and receiving Parties.

## V.     NON-WAIVER OF PRIVILEGE

**A.** Pursuant to Federal Rule of Evidence 502(d), a Party does not waive either attorney client privilege or work product protection by disclosing a document in this Litigation, regardless of the care the producing Party took to avoid the document's disclosure. This nonwaiver provision applies equally to ESI and hard copy documents.

**B.** The mere production of ESI, including without limitation identifying information and other information such as metadata produced in connection with emails, shall not constitute a waiver for any purpose.

**C.** If a Party identifies documents (including ESI) produced by another Party that it reasonably expects is subject to attorney-client privilege or work product protection, the Party in receipt of the documents must promptly identify the producing Party of the same. If the producing Party opts to assert its attorney client privilege or work product protection and claw the document back, it may do so by initiating the process outlined in the Parties' Stipulated Confidentiality Agreement **[D.E.**

## VI.    SCOPE OF AGREEMENT

This Order may be modified by a Stipulated Order of the Parties, by written and signed agreement, or by the Court for good cause shown. Nothing in this Order is intended to, nor does, waive any objections to discovery or admissibility, or any other privileges or immunities or the right to challenge any objection or assertion of privilege or immunity, or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. The Parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Order is intended to, nor does, restrict the ability of any Party to request additional information or seek additional relief from the Court. The Parties each retain the right to seek exceptions, amendments, or modifications to this Order from the Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: 07/02/2026                                          Dated: 07/02/2026

/s/ Hobart M. Hind                                        /s/ Geoffrey A. Marcus (w/ permission)
Hobart M. Hind, Esq.                                    Geoffrey A. Marcus
Georgia Bar No. 355710                               Georgia Bar No. 019451
hhind@butler.legal                                        Vernis & Bowling of Atlanta, LLC
Butler Weihmuller Katz Craig LLP             30 Perimeter Park Drive, Suite 200
400 N. Ashley Dr., Suite 2300                    Atlanta, GA 30341
Tampa, Florida 336002                               404-846-2001
                                                                     gmarcus@national-law.com

/s/ Matthew W. Peaire
Matthew W. Peaire, Esq.                             /s/ Jeffrey P. Gill (w/ permission)
(Admitted Pro Hac Vice)                            Jeffrey P. Gill (Admitted Pro Hac Vice)
Butler Weihmuller Katz Craig LLP             Vernis & Bowling of Northwest Florida, P.A.
Florida Bar No.:  0484717                          315 South Palafox Street
mpeaire@butler.legal                                  Pensacola, Florida 32570
400 N. Ashley Drive, Suite 2300                Tel: (850) 433-5461
Tampa, Florida 33602                                 jgill@florida-law.com

Attorneys for Plaintiffs                               Attorneys for Defendant C.H. Babb Co., Inc.

14

SO ORDERED, this the 6th day of _July, 2026.


_S/Clay D. Land
The Honorable Clay D. Land
United States District Judge
Middle District of Georgia